Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued February 21, 2003          Decided March 18, 2003

No. 01-5346

THE FUND FOR ANIMALS, INC., ET AL.,
APPELLEES

v.

GALE A. NORTON, SECRETARY,
DEPARTMENT OF THE INTERIOR, ET AL.,
APPELLEES

NATURAL RESOURCES DEPARTMENT OF THE MINISTRY OF
NATURE AND ENVIRONMENT OF MONGOLIA,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 01cv00813)

---

*John J. Jackson III* argued the cause and filed the briefs for appellant.

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Howard M. Crystal* argued the cause for plaintiffs-appellees. With him on the brief was *Katherine A. Meyer*. *Jonathan R. Lovvorn* entered an appearance.

Before: TATEL and GARLAND, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The Natural Resources Department of the Ministry of Nature and Environment of Mongolia (NRD) appeals from the denial of its motion to intervene in a case concerning the application of the Endangered Species Act to argali sheep located within Mongolia's borders. Because the NRD satisfies the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), we reverse and direct that the NRD be allowed to intervene.

I

The Endangered Species Act (ESA), 16 U.S.C. §§ 1531 *et seq.*, requires the Secretary of the Interior to determine whether any species is "endangered" or "threatened," *id.* § 1533(a)(1), a responsibility she has delegated to the Department of the Interior's Fish and Wildlife Service (FWS), 50 C.F.R. § 402.01(b). A species is endangered if it "is in danger of extinction throughout all or a significant portion of its range," 16 U.S.C. § 1532(6), and is threatened if it "is likely to become an endangered species within the foreseeable future," *id.* § 1532(20). The ESA provides specified protections for endangered species, *id.* § 1538(a)(1), and instructs the Secretary to issue such regulations as she "deems necessary and advisable to provide for the conservation of" threatened species, *id.* § 1533(d).

The argali sheep, an Asian relative of the North American bighorn sheep, is the largest species of wild sheep in the world. Adult males weigh between 210 and 310 pounds and possess enormous spiral horns. Addition of Argali to List of Endangered and Threatened Wildlife, 57 Fed. Reg. 28,014, 28,014 (FWS, June 23, 1992). In 1992, the FWS listed the

argali as endangered throughout most of its range. It listed the species as threatened rather than endangered, however, in Mongolia, Kyrgyzstan, and Tajikistan. *Id.* (codified at 50 C.F.R. pt. 17).

On April 16, 2001, The Fund for Animals, along with other organizations and individuals dedicated to wildlife conservation in general and protection of argali sheep in particular (collectively, the "Fund" or "plaintiffs"), filed suit against the Secretary of the Interior and the Director of the FWS. The plaintiffs alleged that the defendants violated the ESA, the Administrative Procedure Act, 5 U.S.C. § 706, and their own regulations by failing to list the argali as an endangered species in Mongolia, Kyrgyzstan, and Tajikistan, and by issuing hundreds of permits for sport hunters to import killed argali (or parts thereof) into the United States as "trophies." The plaintiffs asked the court, inter alia, to direct the defendants to list the argali as an endangered species in those countries, to declare unlawful all outstanding permits for the import of argali sheep, and to enjoin the defendants from issuing additional permits.

On April 27, 2001, the Foundation for North American Wild Sheep, as well as other organizations and individuals dedicated to wild sheep hunting and conservation (collectively, the "FNAWS intervenors"), filed a motion to intervene as defendants in the Fund's lawsuit. On June 4, 2001, "the Country of Mongolia, through its Natural Resources Department of the Ministry of Nature and Environment," sought to intervene as a defendant as well. Mot. to Add Intervenor at 1 (J.A. at 139).[1] The NRD, represented by the same counsel who filed on behalf of the FNAWS intervenors, described itself as the agency of the Mongolian government responsible for "implement[ing] [the] policy and decision of [the] Government on rational utilization of natural resources, rehabilitation, and . . . protection," including the country's "tourist hunting program." *Id.* at 2 (J.A. at 140). Another pair of organizations dedicated to hunting and conservation, the Sa-

---

[1] The NRD sought intervention through a motion, filed by the FNAWS intervenors, to add the NRD as an intervenor.

fari Club International and the Wildlife Conservation Fund of America (collectively, the "Safari Club intervenors"), moved to intervene on June 27, 2001.

On September 4, 2001, the district court granted the motions for intervention filed by both the FNAWS and Safari Club intervenors, but denied the motion filed by the NRD. The court did not explain its decision, other than to state that denial of intervention was based "[u]pon consideration of [the NRD's motion], the opposition thereto, and the entire record herein." NRD Order at 1 (J.A. at 386). The instant appeal followed.

## II

Rule 24 of the Federal Rules of Civil Procedure provides for both permissive intervention and intervention as of right. *See* Fed. R. Civ. P. 24(a) & (b). The NRD's motion relied on both theories, and its briefs on appeal cite both. Because we conclude that the NRD is entitled to intervene as of right, we need not address the issue of permissive intervention. *See Foster v. Gueory*, 655 F.2d 1319, 1323–24 (D.C. Cir. 1981).

Rule 24(a)(2) states in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action … when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Parsing the language of the rule, we have held that qualification for intervention as of right depends on the following four factors:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the

applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties."

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) (quoting Fed. R. Civ. P. 24(a)(2)) (citations omitted). We have further held that, in addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution. *See Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C. Cir. 1998); *Mova Pharm.*, 140 F.3d at 1074; *Building & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). As we have explained, "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994).

The denial of a motion for intervention as of right is an appealable final order "because it is conclusive with respect to the distinct interest asserted by the movant." *Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001); *see Alternative Research & Dev. Found. v. Veneman*, 262 F.3d 406, 409–10 (D.C. Cir. 2001). We have been somewhat inconsistent, however, in describing the standard of review for such appeals.[2] As we have previously observed, that may be because we have not always distinguished between the different kinds of determinations necessary to establish the predicate for intervention. *See Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997). Not-

---

[2] *Compare Smoke*, 252 F.3d at 470–71 (stating that the court reviews denials of intervention as of right for clear error), *and Foster*, 655 F.2d at 1324 (same), *with Mova Pharm.*, 140 F.3d at 1074 (explaining that "[t]o the extent that a district court's ruling on a motion to intervene as of right is based on questions of law, it is reviewed *de novo*; to the extent that it is based on questions of fact, it is ordinarily reviewed for abuse of discretion"), *and Building & Constr. Trades*, 40 F.3d at 1282 (stating that denials are reviewed under an abuse of discretion standard).

withstanding that Rule 24(a) is entitled "Intervention of Right," the determinations necessary to establish that predicate are of three different kinds. Some are pure issues of law and hence are reviewed de novo. *See Massachusetts School of Law*, 118 F.3d at 779; *Mova Pharm.*, 140 F.3d at 1074. Others involve findings of fact and are reviewed for clear error. *Cf.* Fed. R. Civ. P. 52(a) (providing that "[f]indings of fact . . . shall not be set aside unless clearly erroneous"). And some involve a measure of judicial discretion and hence are reviewed for abuse of that discretion. *See Massachusetts School of Law*, 118 F.3d at 779 (noting "the existence of district court discretion over the timeliness and adequacy of representation issues under Rule 24(a)(2)") (citing *Hodgson v. United Mine Workers*, 473 F.2d 118, 125 n.26 (D.C. Cir. 1972)); *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 907, 913 (D.C. Cir. 1977) (same).[3] Of course, where (as here) the district court has not accompanied its decision with either factual findings or explanation, there is nothing to which we can defer regardless of which standard of review applies. *See Cook v. Boorstin*, 763 F.2d 1462, 1468 (D.C. Cir. 1985).

Because a would-be intervenor's Article III standing presents a question going to this court's jurisdiction, *see Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002), we address it first, in Part III below. In Part IV, we consider the four factors set forth in Rule 24(a)(2).

## III

To establish standing under Article III, a prospective intervenor — like any party — must show: (1) injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Sierra Club*, 292 F.3d at 898. The NRD argues that it meets these requirements

---

[3] *Cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (prescribing a unitary abuse of discretion standard for reviewing determinations made under Federal Rule of Civil Procedure 11, but noting that a "district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence").

because fees paid by sport hunters are the primary source of funding for its argali conservation program. If the Fund succeeds in barring American hunters from bringing their trophies home, some hunters will not travel to Mongolia to hunt the argali, and the revenues that support the conservation program will decline.

The NRD's argument is persuasive. The threatened loss of tourist dollars, and the consequent reduction in funding for Mongolia's conservation program, constitute a concrete and imminent injury. This injury is fairly traceable to the regulatory action — the placement of the argali on the endangered list and the cancellation of import permits — that the Fund seeks in the underlying lawsuit. And it is likely that a decision favorable to the NRD would prevent that loss from occurring.

In *Military Toxics Project v. EPA*, we considered a similar set of circumstances. There, the Chemical Manufacturers Association (CMA) sought to intervene on the side of the Environmental Protection Agency (EPA) in a lawsuit brought by the Military Toxics Project, a coalition of citizens' groups. 146 F.3d at 953. The Project sued to overturn an EPA rule that declared that most military munitions at firing ranges did not constitute "regulatory solid waste" for purposes of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*, when used for their "intended purpose." *Military Toxics Project*, 146 F.3d at 952. We concluded that the CMA had standing to intervene because, inter alia, "some of its members produce[d] military munitions," those members "benefit[ed] from the EPA's 'intended use' interpretation," and they "would suffer concrete injury if the court grant[ed] the relief the petitioners [sought]." *Id.* at 954. The parallels to this case are clear: Mongolia's sheep are the subject of the disputed regulations, the country benefits from the FWS's current regulations, and Mongolia would suffer concrete injury if the court were to grant the relief the plaintiffs seek.

The Fund does not dispute the logic of the NRD's reasoning. Instead, it contends that the agency has failed to support its claims with evidence. Quoting our decision in

*Sierra Club v. EPA*, the Fund insists that the NRD's standing cannot rest on "mere allegations, but must set forth by affidavit or other evidence specific facts." 292 F.3d at 899 (quotation marks omitted). The Fund contends that the NRD has offered neither affidavits nor other evidence sufficient to satisfy this requirement.[4]

*Sierra Club*, however, does not require parties to file evidentiary submissions in support of standing in every case. To the contrary, our decision made clear that "[i]n many if not most cases the petitioner's standing to seek review of administrative action is self-evident." *Id.* at 899–900. "In particular, if the complainant is 'an object of the action (or forgone action) at issue' — as is the case usually in review of a rulemaking and nearly always in review of an adjudication — there should be 'little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'" *Id.* at 900 (quoting *Defenders of Wildlife*, 504 U.S. at 561–62). In this case, while the NRD is not itself the object of the challenged agency action, sheep that Mongolia regards as its national property and natural resource plainly are its subject. And for the purpose of determining whether standing is self-evident, we see no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property.[5]

---

[4] We note that the above quotations from *Sierra Club* refer to a party's obligations at the summary judgment stage, but not at "the pleading stage" where "'general factual allegations of injury ... may suffice.'" *Sierra Club*, 292 F.3d at 898–99 (quoting *Defenders of Wildlife*, 504 U.S. at 561). In light of our disposition, we need not decide whether the NRD's motion to intervene is closer to a motion for summary judgment or to a pleading.

[5] In fact, in some respects Mongolia is itself "an object of the action ... at issue," *Sierra Club*, 292 F.3d at 900 (quotation marks omitted), because the Fund's complaint contends that the country's conservation program does not satisfy the statutory criteria for issuing import permits under the ESA. *See* Pls.' Second Am. Compl. ¶¶ 41–57.

But even if we were to harbor any doubts about NRD's standing, they would be dissipated by evidence in the district court record. First, there are the Fund's own pleadings, which are admissible as evidence in support of its opponent's cause. *See First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998); *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428, 1431–32 (10th Cir. 1990). In aid of the Fund's attack on the FWS's import permit policy, but in complete accord with the NRD's standing contentions, the Fund's complaint declares:

> A U.S. hunter who cannot import his "trophy" from the country where it is killed is unlikely to spend the resources required to travel to that country to kill the animal. Accordingly, the number of argali that are killed by U.S. hunters is directly related to the number of import permits the [FWS] issues.

Pls.' Second Am. Compl. ¶ 38. This point is further supported by affidavits filed by another set of parties to the district court litigation — the Safari Club intervenors. Confirming both the NRD's logic and the Fund's pleadings, two hunters aver that they will likely cancel their previously scheduled hunting trips to Mongolia if they are unable to obtain import permits. Jacklin Decl. ¶¶ 2, 5 (J.A. at 306); Ward Decl. ¶¶ 2, 5 (J.A. at 308).

We therefore conclude that the NRD has established its Article III standing, and that lack of standing is not a ground for rejecting its motion to intervene as of right.[6]

---

[6] The plaintiffs do not question the NRD's prudential standing, and rightly so. In *Bennett v. Spear*, the Supreme Court held that the broad language of the citizen-suit provision of the ESA — which extends to departments of foreign governments, *see* 16 U.S.C. §§ 1532(13), 1540(g)(1)(C), and on which the plaintiffs rely in the present case — "negates the zone-of-interests test" and expands standing "to the full extent permitted under Article III." 520 U.S. 154, 164, 165 (1997). Even if that were not the case, the NRD's interests are "arguably within the zone of interests to be protected or regulated by the statute," *In re: Vitamins Antitrust Class Actions*, 215 F.3d 26, 29 (D.C. Cir. 2000) (quotation marks omitted),

IV

Turning to the four-factor test of Rule 24(a)(2), *see supra* Part II, we find the balance of our analysis not difficult at all.

First, the NRD's motion was timely. The NRD moved to intervene less than two months after the plaintiffs filed their complaint and before the defendants filed an answer. Indeed, the NRD's motion was filed three weeks before that of the Safari Club intervenors — whose motion the district court granted.

The second factor is also readily dispatched. Our conclusion that the NRD has constitutional standing is alone sufficient to establish that the NRD has "an interest relating to the property or transaction which is the subject of the action," Fed. R. Civ. P. 24(a)(2). *See Mova Pharm.*, 140 F.3d at 1076. In any event, because the relevant "property" is Mongolia's sheep and the relevant "transaction" is the FWS's decision to permit the importation of those sheep from Mongolia, there can be no question that the NRD has the requisite interest. *See Foster*, 655 F.2d at 1324 ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit . . . ."); *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1291–93 (D.C. Cir. 1980) (holding that a prospective intervenor possessed the requisite interest in a database that another company sought from the government, because the database had been prepared by the intervenor).

Third, the NRD is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). Prior to 1966, Rule 24(a)(2) required the applicant to show that it "may be bound by a judgment in the action." Fed. R. Civ. P.

_____

because the ESA requires the Secretary of the Interior to take into account efforts "being made by any . . . foreign nation, or any political subdivision of a . . . foreign nation, to protect [threatened or endangered] species . . . within any area under its jurisdiction," 16 U.S.C. § 1533(b)(1)(A).

24(a)(2) (1966); *see* Fed. R. Civ. P. 24(a)(2) advisory committee's note on 1966 amendment; *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967). But the 1966 amendments to Rule 24 eliminated that requirement and substituted the present language, which we have read "as looking to the 'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[s] available." *Natural Res. Def. Council*, 561 F.2d at 909 (quoting *Nuesse*, 385 F.2d at 702). Regardless of whether the NRD could reverse an unfavorable ruling by bringing a separate lawsuit, there is no question that the task of reestablishing the status quo if the Fund succeeds in this case will be difficult and burdensome. *See id.* at 910 ("[I]t is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation."). Moreover, as the NRD further argues, its loss of revenues during any interim period would be substantial and likely irreparable. *Cf. Mova Pharm.*, 140 F.3d at 1076 (holding that danger of loss of market share due to denial of a preliminary injunction satisfied the third Rule 24(a)(2) factor).

This leaves only the question of whether the NRD's interest is "adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The Supreme Court has held that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Citing *Trbovich*, we have described this requirement as "not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see also Foster*, 655 F.2d at 1325; *American Tel. & Tel. Co.*, 642 F.2d at 1293 (stating that a petitioner " 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee' " (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 (1st ed. 1972))). Measured by that stan-

dard, we conclude that neither of the two groups of existing parties in this case — the federal defendants and the other intervenors — adequately represents the NRD's interests.[7]

The NRD's interests plainly are not adequately represented by the federal defendants. It is true, as the Fund notes, that both the FWS and the NRD agree that the FWS's current rules and practices are lawful. But the FWS's obligation is to represent the interests of the American people, as expressed in the ESA, while the NRD's concern is for Mongolia's people and natural resources. There may be some overlap, since the ESA requires the FWS — when determining whether a species is endangered or threatened — to "tak[e] into account those efforts, if any, being made by any . . . foreign nation, or any political subdivision of a . . . foreign nation, to protect such species . . . within any area under its jurisdiction." 16 U.S.C. § 1533(b)(1)(A). But taking the NRD's efforts "into account" does not mean giving them the kind of primacy that the NRD would give them.[8] Nor must the FWS's appraisal of the NRD's efforts necessarily match the NRD's self-appraisal. It is, therefore, not hard to imagine how the interests of the NRD and those of the FWS might diverge during the course of litigation — when, for

---

[7] Our cases are inconsistent as to who bears the burden with respect to this factor. The language of some cases, particularly those that quote the above passage from *Trbovich*, suggest that the burden is on the aspiring intervenor. *See Foster*, 655 F.2d at 1325; *Dimond*, 792 F.2d at 192. Others declare that the burden is on the opponent of intervention, because Rule 24(a)(2) states that if its first three factors are satisfied, intervention "shall" be permitted "unless" the applicant's interest is already adequately represented. *See American Tel. & Tel. Co.*, 642 F.2d at 1293; *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969). In any event, *Trbovich* makes clear that the standard for measuring inadequacy of representation is low, and in this case it is satisfied regardless of who bears the burden.

[8] *See* 16 U.S.C. § 1533(b)(1)(A) (requiring that determinations of threatened or endangered status be made "solely on the basis of the best scientific and commercial data available" after taking into account the conservation efforts of a foreign nation).

example, the FWS may be required to present its assessment of the quality of Mongolia's argali conservation program.

For just these reasons, we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.[9] For example, in holding that the District of Columbia did not adequately represent the interests of a private insurance company that wished to intervene to support the District against a challenge to its no-fault insurance law, we explained:

> A government entity such as the District of Columbia is charged by law with representing the public interest of its citizens. [The insurance company], on the other hand, is seeking to protect a more narrow and "parochial" financial interest not shared by the citizens of the District of Columbia. The District would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest.

---

[9] *See, e.g.*, *Natural Res. Def. Council*, 561 F.2d at 912–13 (allowing rubber and chemical companies to intervene in support of EPA because their interest "is more narrow and focused than EPA's" and, "[g]iven the acknowledged impact that regulation can be expected to have upon their operations, appellants' participation in defense of EPA decisions that accord with their interest may also be likely to serve as a vigorous and helpful supplement to EPA's defense"); *Smuck*, 408 F.2d at 181 (holding that a school board did not adequately represent the interests of intervening parents because the "board represents all parents," while the intervenors "may have more parochial interests centering upon the education of their own children"). Similarly, in *Trbovich* the Supreme Court authorized intervention by a union member who sought to participate in a suit that the Secretary of Labor had instituted against the member's union, upon the member's own complaint. *See* 404 U.S. at 529. The Court rejected the Secretary's claim that he adequately represented the petitioner, because "the Secretary has an obligation to protect the vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* at 539 (quotation marks omitted).

*Dimond*, 792 F.2d at 192–93. Although it is true that the NRD is itself a governmental entity, it is not an agency of our government. Hence, examined from the perspective of the FWS's responsibilities, the NRD's interests are "more narrow and 'parochial' " — just as the FWS's interests may appear when viewed from the perspective of Mongolia.

Finally, we also reject the Fund's contention that the NRD's interest is adequately represented by the FNAWS and Safari Club intervenors — non-Mongolian organizations and individuals interested in sheep hunting and conservation. We could no more regard the NRD's interests as adequately represented by those intervenors than we could regard the FWS's interests as adequately represented by a Mongolian — or even an American — hunt club, however conservation-minded the club might be. Although there may be a partial congruence of interests, that does not guarantee the adequacy of representation. As we have recognized, "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse*, 385 F.2d at 703. Moreover, even "a shared general agreement . . . does not necessarily ensure agreement in all particular respects," *Natural Res. Def. Council*, 561 F.2d at 912, and "[t]he tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf," *Nuesse*, 385 F.2d at 703.

Nor does the fact that the NRD is represented by the same counsel as the FNAWS intervenors establish the adequacy of representation. Rule 24(a)(2) requires a showing that the existing parties, not their lawyers, will adequately represent the applicant. Sharing the same counsel does not guarantee that the clients' interests are congruent, and if there is a divergence, it is counsel and not the clients who must bend. We are satisfied that the NRD's interests in this litigation are not adequately represented as measured by the *Trbovich* standard, and we therefore find that the last of the Rule 24(a)(2) requirements for intervention has been met.

15

V

Having concluded that the district court erred in denying the NRD intervention as of right, we could remand this case for reconsideration in light of the discussion set forth above. In the past, however, we have not hesitated to direct that intervention be allowed where we found denial to constitute error.[10] That disposition is appropriate where, as here, we cannot envision a contrary determination that would withstand further appeal.[11] Accordingly, we remand this case to the district court with directions to grant the NRD's motion to intervene as of right.

*So ordered.*

---

[10] *See Mova Pharm.*, 140 F.3d at 1076–77; *Dimond*, 792 F.2d at 194; *Foster*, 655 F.2d at 1325; *Natural Res. Def. Council*, 561 F.2d at 913; *see also Trbovich*, 404 U.S. at 539 (remanding with directions to the district court to allow intervention).

[11] In opposing *permissive* intervention in the district court, the Fund, quoting Federal Rule of Civil Procedure 24(b), expressed concern that the NRD would "unduly delay or prejudice the adjudication" by interjecting extraneous claims. At the oral argument of this appeal, however, the Fund agreed that the district court had shown itself able to prevent such delay or prejudice without denying intervention: in granting the motions of the FNAWS and Safari Club intervenors, the court limited their intervention to "the claims raised by the original parties" and barred them from raising "collateral issues." FNAWS Order at 1; Safari Club Order at 1. The same option is available to the district court with respect to the NRD. *See* Fed. R. Civ. P. 24(a) advisory committee's note on 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").