*44 SILBERMAN, Senior Circuit Judge,
concurring, with whom SENTELLE, Senior Circuit Judge, joins:
I agree with the court that we are precluded by our prior opinion from acknowledging appellants’ standing. I write separately because I think Home Builders 1[1] is incorrectly decided and is quite at odds with our jurisprudence. To put it bluntly, it sticks out like a sore thumb.
I.
Our prior holding, which binds us, concluded that appellants did not have standing unless and until their members were a target of an enforcement action (charging illegal discharge) or the government (the Corps of Engineers) issued an “approved jurisdictional determination.” That latter action follows a request of a property owner for the government’s official position as to whether its property contains “waters of the United States” or navigable waters of the United States. In other words, our prior opinion concluded that appellants lacked standing to challenge the alleged rule until the government took official action to assert authority over a member of appellants’ associations. I believe that reasoning conflates the appropriate standing analysis for an adjudicatory challenge and a challenge to a rulemaking. The latter asks only whether parties are likely covered by the regulation — or purported regulation — not whether the government has actually started an enforcement action or officially asserted a right to do so.
Of course, for standing purposes, we must assume the validity of appellants’ challenge on the merits; i.e., we must assume that when the EPA issued a “determination” asserting that more than 50 miles of the Santa Cruz River were designated as traditional navigable waters, it should have done so through a traditional rulemaking under section 553 of the APA. This designation — it is undisputed — affected the entire watershed of the Santa Cruz River, roughly 8,600 square miles, which means that developers were more likely to encounter regulatory obstacles to development. That is because the agency is bound to apply the designation in individual jurisdictional determinations, and permitting decisions.
Previously, as Corps staff members observed in emails urging the EPA to affirm the Corps’ recommendation, the nearest traditional navigable water to that watershed basin was likely 300 miles away. PosC-Rapanos, the agencies had not taken the position that land parcels within the watershed were categorically affected by the presence of a traditional navigable water (that is, to the extent a parcel containing a water feature has a significant nexus to the Santa Cruz River). To reiterate, in asking whether appellants have standing, the question is exactly the same as asking whether they would have had standing to challenge this legal position if it were embodied in an APA rule.
And the law is rather clear; any party covered by an agency’s regulatory action has standing to challenge a rule when it issues — it certainly need not wait until a government agency seeks to enforce a rule. See Chamber of Commerce v. Fed. Election Comm’n, 69 F.3d 600, 604 (D.C.Cir.1995). That proposition is so clearly established it is beyond question. Nor do parties have to wait until the government takes preliminary steps before enforcing — clearing its throat, so to speak. It is only necessary for a potential litigant to show that it is part of the regulated class and its behavior is likely affected by the government’s action.
*45 It seems to me that any property owner in the Santa Cruz watershed who contemplated development and therefore would need a permit from the Corps if its property had a significant nexus to the river, is covered by the regulation. As the court points out, a significant nexus is much more than an abutment to or direct tributary of the river; .it can include desert washes, arroyos or any other particular drainage feature that exists in response to local precipitation. Although it is not determinative, by virtue of the regulation, that a particular landowner is affected by the rule, it is fair to assume that a local developer would potentially fall into that category. See JEM Broad. Co. v. FCC, 22 F.3d 320, 326 (D.C.Cir.1994) (holding that any person or entity within the class affected by the FCC’s “hard look” rules, that is, actual or potential license applicants, had standing to challenge the rules as illegally .promulgated). Essentially that was the position of appellants representing developers in our primary case.
I think that would have sufficed for standing under our cases. See Nat’l Ass’n of Home Builders v. U.S. Army Corps of Eng’rs, 417 F.3d 1272, 1286-87 (D.C.Cir.2005) (“[I]t is fairly ‘self-evident’ that the various appellants as representatives of the regulated parties ... [have] Article III standing”); Sierra Club v. EPA 292 F.3d 895, 899-900 (D.C.Cir.2002) (if a petitioner is an object of the agency action or is directly affected by it — as is the case usually in a rulemaking — there should be little question that it has standing); Fund for Animals, Inc. v. Norton, 322 F.3d 728, 733-34 (D.C.Cir.2003) (standing can be self-evident when the challenged rule directly regulates the disposition of a' petitioner’s property); Sabre, Inc. v. Dep’t of Transp., 429 F.3d 1113, 1119 (D.C.Cir.2005) (previously unregulated independent computer reservation system operator had standing to challenge an FAA regulation that subjected it to the Department’s regulatory authority); Shays v. Fed. Election Comm’n, 414 F.3d 76, 93 (D.C.Cir.2005) (congressmen had standing to launch a conventional administrative law claim, i.e., a facial challenge to allegedly invalid regulations affecting their interests); Am. Trucking Ass’n, Inc. v. Fed. Motor Carrier Safety Admin., 724 F.3d 243, 247 (D.C.Cir.2013) (an association created to promote and protect the interests of the trucking industry had representational standing because it had an obvious interest in challenging a rule that directly and negatively impacts its members); Nat’l Min. Ass’n v. U.S. Army Corps of Eng’rs, 145 F.3d 1399, 1401 (D.C.Cir.1998) (omitting mention of standing (surely because it was so obvious), allowing trade association whose members engage in dredging and excavation to mount a facial challenge to the Corps’ amendment of a regulation defining section 404’s term “discharge of dredged material”).
In the case before us — our second case — we have even more. We have affidavits of developers who had obtained “preliminary jurisdictional determinations.” Under the government’s regulations, a party can hire a consultant to examine its property and prepare a report determining whether it has “waters of the United States” on its property, and therefore must obtain a permit to proceed with development. (After the EPA issued the determination any amount of water on a particular property has different legal significance). The consultant report is submitted to the Corps and qualifies as a “preliminary jurisdictional determination” upon the Corps’ adoption of it, oftentimes with edits. There can be no doubt that such affidavits show standing under any interpretation of our prior cases — or for that matter, I suspect any other court’s cases. See Lujan v. Defenders of Wildlife, *46 504 U.S. 555, 562-63, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (an affidavit that a person, was planning to visit a particular location would be sufficient to show Article III injury).
Because the opinion we are obliged to follow is so much out of step with our case law it should not have continuing jurisprudential significance. And Home Builders should be able to easily establish standing upon the government’s issuance of either an “approved jurisdictional determination” or permit applying the navigability determination (rule?).

. Judge Kavanaugh did not join the court’s core standing analysis.