# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 12, 2013          Decided May 21, 2013

No. 12-5170

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE
FOR THE TRUSTS,
APPELLEE
ANCHORAGE CAPITAL GROUP, L.L.C., ET AL.,
APPELLANTS

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, IN ITS
CAPACITY AS RECEIVER OF WASHINGTON MUTUAL BANK,
ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01656)

*William W. Taylor III* argued the cause for appellants. With him on the briefs were *Shawn P. Naunton* and *Thomas P. Vartanian*.

*Jerome A. Madden*, Counsel, Federal Deposit Insurance Corporation, argued the cause for appellees FDIC-Receiver. With him on the brief were *Kathryn R. Norcross*, Acting Assistant General Counsel, and *Lawrence H. Richmond*, Senior Counsel. *Colleen J. Boles*, Assistant General Counsel, Federal

Deposit Insurance Corporation, *Scott H. Christensen*, and *Robert L. Shapiro* entered appearances.

*Brent J. McIntosh* argued the cause for appellees JP Morgan Chase Bank, et al. With him on the brief was *Robert A. Sacks*.

*Talcott J. Franklin* and *Dennis C. Taylor* were on the brief for appellee Deutsche Bank National Trust Company, as Trustee for the Trusts. *Tanya S. Chutkan* entered an appearance.

Before: TATEL, *Circuit Judge*, and SILBERMAN and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

Concurring opinion filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Appellants, holders of senior notes issued by Washington Mutual — a failed bank — sought to intervene in litigation between Deutsche Bank, the FDIC (Washington Mutual's receiver), and J.P. Morgan Chase. The district court denied intervention under Rule 24 of the Federal Rules of Civil Procedure. We affirm, but conclude that the appellants lack standing.

I

Prior to its collapse, Washington Mutual was the sixth-largest bank in the United States; its closure and receivership is the largest bank failure in American financial history. In September 2008, the U.S. Office of Thrift Supervision seized Washington Mutual Bank and placed it into receivership with

the FDIC.[1]  At the same time, the FDIC entered into a Purchase and Assumption Agreement with J.P. Morgan, under which J.P. Morgan agreed to purchase all of Washington Mutual's assets, including its subsidiaries, and certain of its liabilities.  FDIC also agreed to indemnify J.P. Morgan for losses related to any liabilities that J.P. Morgan did *not* assume under the Agreement, and the FDIC's corporate entity guaranteed this indemnity obligation.

In August 2009, Deutsche Bank sued the FDIC in the District Court for the District of Columbia, alleging breach-of-contract claims in connection with a series of residential mortgage securitization trusts created, sponsored, or serviced by Washington Mutual and its subsidiaries, for which Deutsche Bank served as trustee.  Deutsche Bank asserted that Washington Mutual agreed to repurchase loans that violated representations and warranties contained in the governing documents for these trusts, and it sought several billion dollars in damages from Washington Mutual's successor.

FDIC filed a motion to dismiss, arguing that it was not liable for any of these alleged liabilities under the securitization trusts because it transferred those liabilities and obligations to J.P. Morgan.  Deutsche Bank then filed an amended complaint adding J.P. Morgan as a defendant and seeking a declaratory judgment from the district court as to whether FDIC or J.P. Morgan had assumed these liabilities, or whether both assumed them in whole or in part.  Those three parties — Deutsche Bank,

---

[1] The FDIC's function as a receiver for failed financial institutions, defined in 12 U.S.C. § 1821, is separate from its function as a corporate insurer of deposit accounts, defined in 12 U.S.C. § 1823.  The parties refer to these entities as FDIC-Receiver and FDIC-Corporate respectively, but we will use "FDIC" to refer to its role as receiver, unless otherwise specified.

FDIC, and J.P. Morgan — are engaged in ongoing, three-way litigation about two principal issues: (1) which successor assumed Washington Mutual's liabilities for Deutsche Bank's claims; and (2) the merits and proper damages for those underlying breach-of-contract claims.

But that's only background for the case on appeal. A group of direct holders in Washington Mutual senior notes moved to intervene in this action as of right under Rule 24(a) of the Federal Rules of Civil Procedure.[2] FDIC has recognized these senior notes as legitimate liabilities of the Washington Mutual receivership, so the Proposed Intervenors will be entitled to some pro rata share of the receivership's assets when FDIC administers payment to Washington Mutual's creditors. These note holders sought to intervene as defendants, alleging that any judgment in Deutsche Bank's favor against FDIC could reduce or exhaust the funds in the receivership and therefore jeopardize their recovery. The district court denied appellants' motion under Rule 24(a) on the ground that appellants' alleged interests "have yet to crystallize" because they turn on a prior question of contract interpretation — if J.P. Morgan assumed the relevant liabilities under the Agreement, the FDIC would be off the hook, and therefore the appellants would have no further interest in Deutsche Bank's litigation. This appeal followed.

II

Appellants' claim to intervene is challenged by all three of the basic litigants. Their challenges are based on Rule 24, as well as Article III and prudential standing. In their briefs, these

---

[2] The Proposed Intervenors also included investment advisors of these direct holders authorized to act on their behalf, but the district court held that these advisers lacked standing because they faced no injury, and the appellants do not appeal this ruling.

concepts are intertwined. Indeed, in one of appellee's briefs, one paragraph seems to weave through all three concepts without an effort to separate them.

We must start our analysis with a discussion of standing because, of course, that implicates our jurisdiction, *see Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003) (citing *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)), but we should first describe appellants' Rule 24 arguments — both because they make up the bulk of the parties' briefing, but also because the Rule 24 and standing requirements are similar.

Rule 24(a) provides in relevant part that:

> "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

FED. R. CIV. P. 24(a)(2). We have drawn from the language of this rule four distinct requirements that intervenors must demonstrate: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)).

Appellants argue that their motion is timely because the underlying litigation is still at a nascent stage; that their legal interest in the receivership funds is threatened by Deutsche

Bank's suit; and that the FDIC does not adequately represent their interests because it has a conflict of interest arising from its indemnity obligation to J.P. Morgan. Most importantly, appellants argue that the district court's holding that their claim had not crystallized misunderstood the core of their concern. They fear that the FDIC, perhaps in order to protect the assets of the FDIC's corporate entity from an adverse judgment, will settle with J.P. Morgan at too low a figure. In other words the FDIC, unlike a typical receiver, has skin in the game — a downside risk — that could affect its calculation of the strength of the claim *vis-a-vis* J.P. Morgan. As we deduce their objective, appellants wish to intervene to be able to block such a settlement — perhaps to have negotiating leverage.

Appellees — which include Deutsche Bank, FDIC, and J.P. Morgan, all of whom oppose intervention — argue that the motion was filed more than two years after the initial complaint was filed with no justification for the delay; that appellants have no interest in the contract interpretation and breach-of-contract claims actually at issue in the underlying litigation; and that the FDIC adequately represents appellants' interests because it is statutorily required to maximize the value of creditors' assets and is advancing the same position and arguments as the Proposed Intervenors.[3]

It should be noted that, given the implications of appellants' argument, they are swimming up river. If these bond holders are

---

[3] The Proposed Intervenors have suggested that they are raising an argument the FDIC has not — specifically, that the trust agreements between Deutsche Bank and Washington Mutual are "Qualified Financial Contracts" under 12 U.S.C. § 1821(e)(8)(D). But appellants did not raise this argument below, and in any event, Deutsche Bank has itself raised this issue in its amended complaint naming J.P. Morgan as a defendant.

entitled to intervene, there is no apparent reason why any creditor of Washington Mutual, no matter how small, could be denied a similar opportunity. At oral argument, counsel for appellants responded that any future intervenor could be rejected on the ground that appellants themselves provided adequate representation under Rule 24. But another creditor might assert a different view of the underlying litigation as a reason why appellants' motivation was different than theirs. Morever, a precedent allowing an ordinary creditor to intervene in litigation involving a receiver would presumably have widespread effect.

\* \* \*

Turning to standing, appellants assert initially that as *defendant*-intervenors, they are not obliged to demonstrate Article III standing at all. That contention is drawn from our dicta in *Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003). We observed there in passing that "[r]equiring standing of someone who seeks to intervene as a defendant runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction." *Id.* at 233 (internal citation omitted). But we went on to hold that, in that case, the United States as defendant-intervenor *did* have standing. *Id.* at 233-34. We relied on our prior decision in *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533 (D.C. Cir. 1999), which acknowledged a circuit split on whether intervenors must possess Article III standing, but which unequivocally came down on the side of requiring standing (not distinguishing between plaintiffs and defendants). *Id.* at 538. It is therefore circuit law that intervenors must demonstrate Article III standing, *Fund for Animals*, 322 F.3d at 732-33, and we think appellants fail to do so here.

It is axiomatic that Article III requires a showing of injury-in-fact, causation, and redressability. The leading Supreme

8

Court case, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), describes the first element as including a showing of an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* at 560. Appellants point to their economic interest in the receivership funds as a legally protected interest. That much is clearly correct. But appellants are not persuasive in showing that their economic interest faces an imminent, threatened invasion — i.e., one that is not conjectural or speculative.

First, at least two major contingencies must occur before Deutsche Bank's suit could result in economic harm to appellants: (1) the district court must interpret the Agreement to find that FDIC did *not* transfer the relevant liability to J.P. Morgan; and (2) Deutsche Bank must prevail on the merits against FDIC in its breach-of-contract claims. It is only if a federal judgment concludes that the FDIC had not transferred liability to J.P. Morgan that the receivership funds will even be in jeopardy; if J.P. Morgan assumed the liabilities, then appellants' economic interest drops out entirely. Under such circumstances, where a threshold legal interpretation must come out a specific way before a party's interests are even at risk, it seems unlikely that the prospect of harm is actual or imminent. *Cf. Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 648 (D.C. Cir. 1998) (noting that the creation of adverse legal precedent is insufficient to create Article III standing, even where future litigation is foreseeable).

But second, and more decisively, the real alleged threat to appellants' legally protected interest is not the ostensible concern with Deutsche Bank's possible subsequent claim against the FDIC, but the prospect that the FDIC would enter into what appellants regard as an unfavorable settlement. And the difficulty with that claim — besides ignoring the FDIC's

statutory obligation to represent creditors fairly — is that it is hopelessly conjectural. The district court seemed to suggest that it was only after the contract interpretation was settled that appellants' interests would crystallize, but paradoxically, at that point in the litigation, appellants would no longer be concerned with intervention. Indeed, their brief acknowledged that resolution of the contract interpretation is "the principal dispute in which the Intervenors seek to participate." After this question is settled, there is no apparent reason why appellants would be unwilling to rely on the FDIC to defend against Deutsche Bank's claims. Appellants might well have standing under Article III at *that* point (though it would be virtually impossible to show under Rule 24 that existing parties do not adequately protect their interests), but they do not have it *now*.

Even if appellants enjoyed Article III standing — which they do not — they would still run afoul of *prudential* standing requirements, which could be thought similar to the concept embodied in Rule 24 that a proposed intervenor must have an interest "relating to" the property or transaction at issue in the litigation.[4] Appellants lack prudential standing to enforce the terms of the Agreement because they were neither parties nor intended third-party beneficiaries to this contract. *See Interface*

---

[4] Prudential standing, like Article III standing, is a threshold, jurisdictional concept. *Steffan v. Perry*, 41 F.3d 677, 697 (D.C. Cir. 1994) (en banc). Federal courts may consider third-party prudential standing even before Article III standing, *see Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004), so there is no problem deciding prudential standing as an alternative holding — as we have previously found it appropriate to do. *See Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 807 (D.C. Cir. 1987). On the other hand, it would be improper to decide the Rule 24 issue (the "merits" question on this appeal), but we think it appropriate to discuss the "relating to" language of the rule because we see it as closely bound up with the prudential standing inquiry.

*Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932-33 (11th Cir. 2013); *GECCMC, 2005-C1 Plummer St. Office L.P. v. JPMorgan Chase Bank, N.A.*, 671 F.3d 1027, 1033 (9th Cir. 2012); *see also SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 160 (D.C. Cir. 1998) ("Because the parties to the consent decree clearly indicated that third parties such as appellants are not intended third party beneficiaries, appellants have no legally protected interest in enforcing the terms of the consent decree.").[5]

Of course, appellants are seeking to intervene, not to bring a cause of action under the Agreement itself. But appellants concede that they are not intended beneficiaries, so the basic point remains that the contract does not protect *their* rights. Insofar as the Proposed Intervenors wish to be heard on the specific question of contract interpretation, they are effectively seeking to enforce the rights of third parties (here, the FDIC), which the doctrine of prudential standing prohibits. *Steffan v. Perry*, 41 F.3d 677, 697 (D.C. Cir. 1994) (en banc).

To be sure, once before we indicated that if a proposed intervenor satisfied Article III, then that "is alone sufficient to establish that [an intervenor] has 'an interest relating to the property or transaction that is the subject of the action.'" *Fund for Animals,* 322 F.3d at 735 (quoting FED. R. CIV. P. 24(a)(2)). That statement could be thought to suggest that the third-party aspect of prudential standing is inapplicable here — and similarly, that Rule 24's phrase "*relating to* the property or

---

[5] Other courts do not seem to have specifically identified this rule as going to third-party prudential standing, but that seems to us the most natural understanding. When a litigant is neither party to nor an intended beneficiary of a contract, then any claim brought under that contract must belong to a third party.

transaction that is the subject of the action" (emphasis added) has no meaning beyond Article III's requirements.

In *Fund for Animals*, we relied on previous cases that had equated the legally protected interest requirement of Article III with the "interest" of Rule 24. *Id.* at 735. That equation is undeniable with respect to the *kind* of interest that Rule 24 protects. As we have indicated, however, the "relating to" language suggests a sort of nexus requirement more akin to third-party prudential standing. But in *Fund for Animals*, we recognized that the statute in question had been interpreted by the Supreme Court to eliminate prudential standing considerations and to extend standing to the full limits of Article III. *Id.* at 734 n.6. The standing dispute there was only whether the intervenor, a Mongolian agency, had adduced sufficient evidence for the proposition that listing argali sheep as an endangered species would adversely affect Mongolian tourism. *Id.* at 733-34. Because prudential standing was irrelevant in that case, the broad language quoted above must be understood in context as not precluding considerations of prudential standing under different statutes.

We note also that other circuits have generally concluded that a party may not intervene in support of a defendant solely to protect judgment funds that the party wishes to recover itself. *See, e.g.*, *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008-09 (8th Cir. 2007); *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005); *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004) ("[A]n allegedly impaired ability to collect judgments arising from past claims does not, on its own, support a right to intervention. To hold otherwise would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded."). We would therefore be quite hesitant to suggest that a creditor's general economic

interest in receivership funds, even if sufficient to support Article III standing, would necessarily be an interest relating to any action that threatens those funds. Be that as it may, our holding is only that appellants lack prudential standing, not that they fail Rule 24's requirements.

\* \* \*

Accordingly, we conclude that appellants lack standing, and the judgment of the district court is affirmed.

*So ordered.*

SILBERMAN, *Senior Circuit Judge*, *concurring*:  As our opinion explains, Op. at 7, straightforward reliance on our prior case law suffices to reject appellants' argument that they need not demonstrate standing as a defendant-intervenor.  But I think it worth noting the concerns that weigh against any alteration of our precedent on this point.

If we were authorized to dispense with the standing requirement for a defendant-intervenor, then any organization or individual with only a philosophic identification with a defendant — or a concern with a possible unfavorable precedent — could attempt to intervene and influence the course of litigation.  To be sure, parties seeking intervention as of right would still need to meet the specific standards articulated in Rule 24(a), but district courts have discretion to grant *permissive* intervention under Rule 24(b), which requires only that a party have "a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b)(1)(B).  Opening participation to parties without standing would be quite troublesome in direct review in the court of appeals, *see Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 539 (D.C. Cir. 1999), but intolerable at the district court level, where individual parties have substantial power to direct the flow of litigation and affect settlement negotiation.  Our rule requiring all intervenors to demonstrate Article III standing prudently guards against this possibility.