# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 20, 2015          June 5, 2015

No. 14-5199

PUBLIC CITIZEN, ET AL.,
APPELLEES

CROSSROADS GRASSROOTS POLICY STRATEGIES,
APPELLANT

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00148)

———

*Thomas W. Kirby* argued the cause for appellant. With him on the briefs were *Michael E. Toner*, *Brandis L. Zehr*, and *Samuel B. Gedge*.

*Erin R. Chlopak*, Attorney, Federal Election Commission, argued the cause for appellee Federal Election Commission. With her on the briefs were *Kevin A. Deeley*, Acting Associate General Counsel, and *Greg J. Mueller* and *Charles Kitcher*, Attorneys.

Before: ROGERS and BROWN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Crossroads GPS, the beneficiary of a favorable decision by the Federal Election Commission, moved to intervene as a defendant in a suit challenging the Commission's ruling. The district court denied intervention, finding Crossroads' interests were aligned with the FEC's Office of General Counsel's, which was defending the ruling. The court concluded the Office of General Counsel could adequately represent Crossroads' interests—even though the Office opposed Crossroads in the prior proceedings before the FEC, and even though the two parties disagree as to the administrative record and litigation strategy.

Aesop, an Ancient Greek famous for his fables, once wrote, "a doubtful friend is worse than a certain enemy." Recognizing that doubtful friends may provide dubious representation, "we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). The same holds true in this case. The district court erred in denying Crossroads' motion for intervention as of right.

I.

The Federal Election Campaign Act of 1971 ("FECA" or "Act"), 52 U.S.C. §§ 30101–30126, 30141–30146, regulates the financing of elections for federal office. For entities that qualify as "political committees," FECA requires compliance with certain requirements, such as registering with the FEC,

filing periodic financial reports, and having a treasurer. *See* 52 U.S.C. §§ 30101–30104.

The enforcement of FECA is triggered when a private party lodges a complaint with the FEC. *Id*. § 30109(a)(1). The Commission notifies the respondent and provides an opportunity to explain. *Id*. The Commission then reviews the complaint, and any response if one is filed, to determine whether there is "reason to believe" the respondent committed a violation. *Id*. § 30109(a)(2). If four of the six Commissioners conclude there is reason to believe a violation was committed, a full FEC investigation commences. *Id*. Conversely, if there are fewer than four votes, the FEC dismisses the administrative complaint. *See id*. §§ 30106(c), 30109(a)(2).

If the Commission votes to dismiss the complaint, the administrative complainant may sue the Commission in the United States District Court for the District of Columbia. *Id*. § 30109(a)(8)(A). Judicial review under section 30109(a)(8)(A) is limited, and a district court will reverse the Commission's dismissal of a complaint only if it was "contrary to law." *FEC v. Democratic Senatorial Campaign Comm*., 454 U.S. 27, 39 (1981).

When a court declares the Commission's dismissal contrary to law, the Commission has 30 days to "conform [its] declaration." 52 U.S.C. § 30109(a)(8)(C). But a court order cannot command a different outcome on remand; the Commission may reach the same outcome relying on a different rationale. *See FEC v. Akins*, 524 U.S. 11, 25 (1998).

In October 2010, Public Citizen and others (collectively "Public Citizen") filed an administrative complaint with the FEC against Crossroads GPS, a nonprofit corporation whose

purpose is to "research, educat[e], and communicat[e]" about "policy issues of national importance." J.A. 60. The complaint alleged Crossroads violated FECA by "raising and spending significant amounts of money to influence the 2010 congressional elections" without complying with the organizational and reporting requirements applicable to federal "political committees." J.A. 8. Crossroads denied the allegations in a formal response.

The FEC's legal department, the Office of General Counsel, recommended the Commission "find reason to believe" Crossroads violated FECA by "failing to organize, register, and report as a political committee." J.A. 56. Upon voting, however, the Commission's six members divided evenly. Because of FECA's four-vote requirement, the Commission dismissed the complaint against Crossroads.

Public Citizen filed suit and contended the Commission's denial of the administrative complaint was contrary to law. Crossroads quickly filed a motion to intervene, which the Commission opposed.

The district court agreed Crossroads had standing to intervene as a defendant. It found "re-exposure to an administrative complaint that previously had been decided in its favor" would "likely" cause Crossroads "to expend significant resources before the FEC" in arguing for dismissal of the complaint. J.A. 235. The court, however, rejected Crossroads' broader argument that reopening of the favorable dismissal order, alone, and without consideration of the accompanying litigation costs, created a significant potential injury. The court found that injury was "too speculative" to support standing because even if the Commission's dismissal order was upended, the Commission would still need "to vote

to proceed with an investigation, and then vote to authorize a civil enforcement action against Crossroads." J.A. 234 n.1.

Concerning intervention as of right, the court concluded Crossroads had failed to satisfy the requirements of Federal Rule of Civil Procedure 24. While acknowledging that Crossroads' and the Commission's interests ultimately may diverge, the court found their interests were aligned in "defending the legality of the FEC's dismissal." J.A. 236. As to this narrow interest—which, the court noted, "is the interest upon which Crossroads GPS establishes standing"—the court concluded the FEC could adequately represent Crossroads' interest, even though the "FEC Office of General Counsel recommended against dismissal below." J.A. 236.[1]

We review the denial of a motion to intervene as of right de novo for issues of law, clear error as to findings of fact, and an abuse of discretion on issues that "involve a measure of judicial discretion." *Fund for Animals*, 322 F.3d at 732. As to questions of standing, we review them de novo. *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013).

## II.

Article III standing is not a threshold determination that courts normally make before allowing a defendant to enter a case. The standing inquiry is generally "directed at those who invoke the court's jurisdiction," and most defendants are pulled into a case unwillingly. *Roeder v. Islamic Republic of*

---

[1] The district court also rejected Crossroads' request for permissive intervention. As will be explained below, the court erred in rejecting intervention as of right, so there is no need for us to decide the permissive intervention question.

*Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). But where a party tries to intervene as another defendant, we have required it to demonstrate Article III standing, reasoning that otherwise "any organization or individual with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation." *Deutsche Bank Nat'l. Trust Co. v. FDIC*, 717 F.3d 189, 195 (D.C. Cir. 2013) (Silberman, J., concurring).

The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability. *Deutsche Bank*, 717 F.3d at 193. Crossroads currently faces no exposure to further enforcement proceedings before the FEC because it won a favorable ruling. But should Public Citizen's suit succeed, Crossroads' victory would be lost. If that injury suffices for standing purposes, then it rationally follows the injury is directly traceable to Public Citizen's challenge to the FEC order; and Crossroads can prevent the injury by defeating Public Citizen's challenge in the district court proceedings. Put differently, if Crossroads can prove injury, then it can establish causation and redressability. *See Roeder*, 333 F.3d at 233–34. So the case for standing turns on whether Crossroads alleges a sufficient injury in fact, which the Supreme Court has described as including an invasion of a legally protected interest that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The district court found that, if Public Citizen prevails, Crossroads "likely would have to expend significant resources [urging the FEC again] to dismiss the complaint." J.A. 235. But, the litigation expenses rationale already has been rejected in this Circuit. *See Am. Soc'y. for Prevention of Cruelty to*

*Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) ("Under our case law, an organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing."); *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011); *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990).

Crossroads' broader theory of injury fares better. Under the current FEC order, Crossroads faces no further enforcement proceedings and, as long as the order is in place, it bars Public Citizen from pursuing the same grievance against Crossroads. *See FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 488 (1985). In short, the favorable FEC ruling provides Crossroads—as most favorable agency actions would—with a significant benefit, similar to a favorable civil judgment, and precludes exposure to civil liability. Were Crossroads to lose that beneficial ruling, it would return to the position of a respondent subject to enforcement proceedings before a federal agency. Crossroads understandably claims this loss would amount to concrete injury.

Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit. For example, in *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998), the Chemical Manufacturers Association ("CMA") sought to intervene on the side of the EPA in a lawsuit brought by the Military Toxics Project, who sued to overturn an EPA rule favorable to CMA. We concluded CMA had standing to intervene because some of its members produced military munitions, and those

members benefited from the EPA's rule, such that they "would suffer concrete injury if the court grant[ed] the relief the petitioners [sought]." *Id*. at 954. In *Fund for Animals*, the Natural Resources Department of the Ministry of Nature and Environment of Mongolia ("NRD") sought to intervene as a defendant in a suit challenging action by the Fish and Wildlife Service ('FWS"). 322 F.3d at 730. The Fund for Animals challenged FWS' failure to classify argali sheep as an endangered species. NRD sought to intervene as a defendant, alleging that, if the district court overturned the Secretary's order and argali sheep were declared endangered species, Mongolia would lose tourist dollars associated with sheep hunting and a consequent reduction in funding for its conservation program. *Id*. at 733. We found NRD's "threatened loss of tourist dollars" and the "consequent reduction in funding for Mongolia's conservation program" constituted a "concrete and imminent injury." *Id*.

By contrast, in *Deutsche Bank*, we found a potential intervenor-defendant's claim of injury too attenuated to constitute a sufficient injury. There, holders of senior notes issued by a failed bank sought to intervene as a defendant in litigation between Deutsche Bank and the FDIC, which acted as the failed bank's receiver. In deciding the standing question, we noted that the district court would need to reach a particular legal conclusion—that the receiver retained the underlying liability at issue—before the intervenor's interest would be at stake. *Deutsche Bank*, 717 F.3d at 193. We consequently held that where a "threshold legal interpretation must come out a specific way before a party's interests are even at risk, it seems unlikely that the prospect of harm is actual or imminent." *Id*. We also explained the real threat to the note holders' legally protected interests was not the litigation at all, but instead whether the FDIC would enter into

what the note holders regarded as an unfavorable settlement. *Id*.

The claimed injury here falls on the *Fund for Animals* and *Military Toxics Project* side of the line. Those cases stand for the proposition that even where the possibility of prevailing on the merits after remand is speculative, a party seeking to uphold a favorable ruling can still suffer a concrete injury in fact. In *Fund for Animals*, for example, we did not require the NRD to show that overturning the Secretary's ruling would certainly result in a declaration that argali sheep are an endangered species. Crossroads currently claims a significant benefit from the FEC's dismissal order. As long as it is in place, Crossroads faces no further exposure to enforcement proceedings before the FEC related to the complaint, nor is it exposed to civil liability via private lawsuit. *See Nat'l Conservative*, 470 U.S. at 488–89. Losing the favorable order would be a significant injury in fact. And, unlike *Deutsche Bank*, there is no threshold legal determination that might obviate Crossroads' interest in upholding the dismissal order.

In one sense, Crossroads' threatened injury is even greater than the injuries we found sufficient in our previous cases. The defendants in those cases sought to uphold agency action affecting them indirectly. In *Fund for Animals*, the NRD sought to intervene because the Secretary's order tangentially benefited Mongolia's tourist industry and conservation efforts. 322 F.3d at 733. In *Military Toxics Project*, the defendant claimed its members benefited indirectly from an EPA rule regarding munitions. 146 F.3d at 954. Here, by contrast, the agency action at issue involved potential direct regulation of Crossroads—*i.e.*, a determination of whether Crossroads was a political committee required to register with the FEC. *See* 52 U.S.C. §§

30102–30104. Crossroads thus has a significant and direct interest in the favorable action shielding it from further litigation and liability; and the "threatened loss" of that favorable action constitutes a "concrete and imminent injury." *Fund for Animals*, 322 F.3d at 733.

The Commission contends Crossroads must establish Public Citizen will prevail in order to prove the injury in fact. But our cases have never required, as the cost of admission, an intervenor-defendant to prove the merits of its adversary's case. For standing purposes, it is enough that a plaintiff seeks relief, which, if granted, would injure the prospective intervenor. *See id.*

The Commission also claims the specter of the district court invalidating the dismissal order portends mere speculative harms. The Commission maintains there is no guarantee it would ultimately file a civil enforcement suit against Crossroads even if the district court were to invalidate the order. It could conceivably vote to dismiss the enforcement proceedings again on other grounds.

The Supreme Court considered and rejected a similar claim in *Clinton v. City of New York*, 524 U.S. 417 (1998). There, New York City challenged the President's line-item veto authority after the President vetoed a provision shielding the state from liability for certain tax payments. The vetoed statute allowed the state to file for a statutory waiver from tax liability with Department of Health and Human Services ("HHS"). Importantly, HHS had yet to rule on New York's waiver at the time the state filed the lawsuit. *Id.* at 422. On appeal, the government objected to standing, arguing the City's "contingent liability" would never materialize because HHS had not yet acted on the state waiver request. *Id.* at 430. The Court rejected that argument and compared the

President's actions to a "judgment of an appellate court setting aside a verdict for the defendant and remanding for a new trial of a multibillion-dollar damages claim." *Id*. at 430–31. "Even if the outcome of the second trial is speculative," the Court held, "the reversal, like the President's cancellation, causes a significant immediate injury by depriving the defendant of the benefit of a favorable final judgment." *Id*. at 431. Here, even if the district court cannot command the precise enforcement route the Commission must take on remand, invalidating the dismissal order would extinguish the current barrier to enforcement and would limit the Commission's discretion in the future. Whatever the ultimate outcome, Crossroads has a concrete stake in the favorable agency action currently in place.

### III.

The Commission also argues that prudential standing prevents the court from hearing this case because Crossroads' interests do not fall within the zone of interests FECA protects. We disagree.

We have applied the prudential standing doctrine to intervenor-defendants under the theory that it was a "jurisdiction[al] concept" on par with Article III standing. *See Deutsche Bank,* 717 F.3d at 194 n.4. But the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S.Ct. 1377 (2014), makes plain the zone of interests test no longer falls under the prudential standing umbrella. *Id*. at 1386–87. Nor is it a jurisdictional requirement. *Id*. at 1387 n.4. Instead, the zone of interest test is now "a merits issue." *United States v. Emor*, No. 13-3071, 2015 WL 2061817 at *5 (D.C. Cir. May 5, 2015). Whether a "plaintiff" comes within the zone of interests, the Court stated, "is an issue that requires us to determine, using traditional tools of statutory

interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 134 S. Ct. at 1387. Or, put another way, a court asks whether the plaintiff "has a cause of action under the statute." *Id*.

We asked the parties to address how the zone of interests test applies to intervening defendants after *Lexmark*. The best the Commission could offer was that "*Lexmark* does not upset this Court's body of law taking standing and related threshold concepts originating as requirements for plaintiffs," and extending them to "defendant-intervenors." Suppl. Brief for the Federal Election Commission at 6–7, Public Citizen v. FEC, No. 14-5199 (D.C. Cir. Feb. 10, 2015). Even if it were true that *Lexmark* changes nothing (which, we think, cannot possibly be the correct answer), we would still need to know how a standard asking whether a plaintiff has a proper cause of action applies to a would-be defendant, who, self-evidently, is not bringing a new cause of action.

In our view, without a jurisdictional basis, the zone of interests test should no longer apply to intervening defendants. In a motion to intervene under Rule 24, "the question is not whether the applicable law assigns the prospective intervenor a cause of action. Rather, the question is whether the individual may intervene in an already pending cause of action." *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1017–18 (D.C. Cir. 2003). Indeed, as Rule 24's plain text indicates, "intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Id*. at 1018 (citing FED. R. CIV. P. 24(a)(2)).

Where an intervenor-defendant establishes Article III standing and meets the dictates of Federal Civil Rule 24, there is no need for another layer of judge-made prudential

considerations to deny intervention. *Cf. Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014) ("To the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are prudential, rather than constitutional, that request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging."). Article III standing will already forbid potential intermeddlers with limited interests beyond the dispute at issue, *see Deutsche Bank*, 717 F.3d at 195–96 (Silberman, J., concurring), as will Rule 24, for that matter, *see* FED. R. CIV. P. 24(a)(2) (an intervenor must claim "an interest relating to the property or transaction that is the subject of the action"). If a district court has already found the plaintiff stated a valid cause of action, then it is not apparent what the zone of interests test can bring to the table; because, in any event, the court must still hear the plaintiff's claim (albeit with one less party's input). For these reasons, we think the zone of interests has no applicability to an intervening defendant in a post-*Lexmark* world.

IV.

In deciding whether a party may intervene as of right, we employ a four-factor test requiring: 1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest. *Deutsche Bank*, 717 F.3d at 192.

Two of those factors can be dealt with summarily. The Commission has never questioned timeliness, most likely because Crossroads filed an intervention motion before the FEC had even entered an appearance. And since Crossroads

has constitutional standing, it *a fortiori* has "an interest relating to the property or transaction which is the subject of the action." *Fund for Animals*, 322 F.3d at 735 (holding the standards for constitutional standing and the second factor of the test for intervention as of right are the same); *see also Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1018–19 (D.C. Cir. 2003).

The third factor also favors Crossroads. An adverse judgment in the district court would impair Crossroads' defense in a new proceeding because a judicial pronouncement that the FEC's dismissal was contrary to law would make the "task of reestablishing the status quo . . . [more] difficult and burdensome." *Funds for Animals*, 322 F.3d at 735. And should Public Citizen seek a subsequent civil enforcement suit, the district court's ruling would have persuasive weight with a new court. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (holding that "a decision rejecting the inmates' claims could establish unfavorable precedent that would make it more difficult for [intervenor] to succeed on similar claims if he brought them in a separate lawsuit of his own").

The district court denied intervention as of right solely on the fourth factor. It reasoned that the Commission could adequately represent Crossroads' interests because their interests were aligned in defending the legality of the dismissal order.

To begin with, the district court never acknowledged that we have described this last requirement for intervention as "not onerous," *Fund for Animals*, 322 F.3d at 735, or "low," *id*. at 736 n.7, and that a movant "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation," *United States v. Am. Tel. &*

*Tel. Co*., 642 F.2d 1285, 1293 (D.C. Cir. 1980). Nor did the court acknowledge that we look skeptically on government entities serving as adequate advocates for private parties. *See Fund for Animals*, 322 F.3d at 736; *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912–13 (D.C. Cir. 1977).

In addition, by treating general alignment as dispositive, the district court went against the weight of authority in this Circuit. In *Fund for Animals*, we reversed a denial of intervention even though the federal agency and prospective intervenor undisputedly agreed that the agency's current rules and practices were lawful. 322 F.3d at 726. In *Costle*, we stressed that even when the interest of a federal agency and potential intervenor can be expected to coincide, "that does not necessarily mean [ ] adequacy of representation is ensured for purpose of Rule 24(a)(2)." 561 F.2d at 912. The district court thus applied the wrong legal standard to Crossroads' request for intervention, and a court, by definition, "abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

It is apparent the Commission and Crossroads hold different interests, for they disagree about the extent of the Commission's regulatory power, the scope of the administrative record, and post-judgment strategy. By arguing there was no sufficient injury for standing purposes, the Commission even disagrees that Crossroads has any cognizable interest in this case. Those disagreements are understandable; the underlying issues before the district court are the under-enforcement of federal law and the authority of the FEC—an agency that could seek to regulate Crossroads directly and immediately after its dismissal order is revoked. In such circumstances, Crossroads should not need to rely on a doubtful friend to represent its interests, when it can represent itself.

Crossroads easily met the minimal burden of showing inadequacy of representation and should be allowed to intervene as of right.

## V.

For the foregoing reasons, the district court's judgment is

*Reversed.*