# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 11, 2021                    Decided July 6, 2021

No. 21-5009

YOCHA DEHE WINTUN NATION,
APPELLANT

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL.,
APPELLEES

SCOTTS VALLEY BAND OF POMO INDIANS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01544)

———

*Matthew G. Adams* argued the cause for appellant.  With him on the briefs was *Samantha R. Caravello.*

*Patrick R. Bergin* argued the cause for appellee Scotts Valley Band of Pomo Indians.  With him on the brief was *Tim Hennessy.*

*Varu Chilakamarri*, Attorney, U.S. Department of Justice, argued the cause for federal appellees.  With her on the brief was *William B. Lazarus*, Attorney.

Before: HENDERSON and ROGERS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Yocha Dehe Wintun Nation appeals the denial of its motion to intervene as a defendant in litigation brought by the Scotts Valley Band of Pomo Indians against the United States Department of the Interior. The underlying litigation concerns the Department's Indian Lands Opinion that a parcel on which Scotts Valley would someday like to develop a casino does not qualify for the "restored-lands exception" under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* Yocha Dehe joined others in objecting to Scotts Valley's request for the Indian Lands Opinion. The district court denied Yocha Dehe's motions for intervention and reconsideration, ruling that Yocha Dehe lacked standing under Article III of the U.S. Constitution to intervene. We affirm.

**I.**

The Indian Gaming Regulatory Act "allows a federally-recognized Indian tribe to conduct gaming on lands held in trust by the Secretary of the Interior for the tribe's benefit." *Butte Cnty. v. Chaudhuri*, 887 F.3d 501, 503 (D.C. Cir. 2018) (citing 25 U.S.C. §§ 2710(b)(1), 2703(4)(B)). Generally, this authorization applies only if the lands had been taken into trust as of October 17, 1988, the Act's effective date. *See* 25 U.S.C. § 2719(a). But the Act permits gaming on lands that are thereafter taken into trust "as part of . . . the restoration of lands for an Indian tribe that is restored to Federal recognition." *Id.* § 2719(b)(1)(B)(iii). To qualify for this "restored-lands exception," "a tribe that has regained its federal recognition must prove (among other things) that it has 'a

significant historical connection to the land' at issue." *Butte Cnty.*, 887 F.3d at 504 (quoting 25 C.F.R. § 292.12(b)).

Yocha Dehe Wintun Nation ("Yocha Dehe") is a federally recognized Indian tribe "comprised of the descendants of Patwin people native to the Northeastern San Francisco Bay Area and the lower Sacramento River Valley, an area of California that includes . . . Solano and Yolo Counties." Decl. of Anthony Roberts, Yocha Dehe Chairman ¶ 4. Scotts Valley Band of Pomo Indians ("Scotts Valley") is also a federally recognized Indian tribe, having regained its Federal recognition in 1991, and most of its members reside in several counties in northern California.

The underlying litigation concerns an Indian Lands Opinion. In January 2016, Scotts Valley requested an opinion from the Interior Department on whether a 128-acre parcel of land in the Solano County City of Vallejo would be eligible for tribal gaming under the restored-lands exception. Yocha Dehe joined others in objecting to the request and submitted materials to the Department in support of its objections. In February 2019, the Department issued an Indian Lands Opinion in which it concluded that Scotts Valley had been restored to Federal recognition and that the Tribe had demonstrated the required "modern" and "temporal" connections to the parcel, but that it failed to demonstrate the requisite "significant historical connection to the land" as required by 25 C.F.R. § 292.12(b). Indian Lands Op. at 2 & n.8, 3.

Scotts Valley then filed a complaint in the district court, challenging the Department's decision under the Administrative Procedure Act. Thereafter, Yocha Dehe filed a motion to intervene as of right or permissively, seeking to defend the Department's decision alongside the government.

Yocha Dehe explained that it had an interest in preventing Scotts Valley from ultimately developing a casino in the vicinity of the San Francisco Bay Area because it would compete with Yocha Dehe's gaming facility — the Cache Creek Casino Resort in Yolo County — whose primary market is the Bay Area. Specifically, Yocha Dehe feared an adverse impact on revenues at its Cache Creek gaming facility, which the Tribe uses "to support its government, which funds a variety of programs, and which provides jobs, education, housing and healthcare for [its] citizens." Roberts Decl. ¶ 4. Additionally, Yocha Dehe maintained, the proposed casino would interfere with its duty (shared with two sister Patwin tribes) to "protect[] sacred sites and cultural resources buried throughout the county of Solano" — the "ancestral territory of the Patwin people" — because "the very site Scotts Valley seeks to develop holds cultural resources affiliated with [Yocha Dehe's] Patwin ancestors." *Id.* ¶ 2.

The district court denied Yocha Dehe's motion to intervene. *Scotts Valley Band of Pomo Indians v. U.S. Dep't of the Interior*, 337 F.R.D. 19, 21 (D.D.C. 2020). It concluded that injuries from a potential future competitor casino that has yet to be approved or developed are neither "imminent" nor "certainly impending." *Id.* at 24–25 (internal quotation marks omitted). Similarly, the court concluded that there was an insufficient causal link between the alleged threatened injuries and the challenged agency action, given various other steps that Scotts Valley would need to successfully complete before it might operate a casino if the Department's restored lands determination were reversed or remanded as a result of this litigation. *See id.* at 25. The district court further ruled that even if Yocha Dehe had standing, it had not made the required showing under Rule 24(a) of the Federal Rules of Civil Procedure to intervene as of right because resolution of the case would not "as a practical matter impair or impede" its ability to

protect its interests. *Id.* at 26–27; FED. R. CIV. P. 24(a)(2). The court denied permissive intervention under Rule 24(b) but invited Yocha Dehe to submit an amicus brief in support of the government's dispositive motion. *Scotts Valley*, 337 F.R.D. at 27. The district court also denied Yocha Dehe's motion for reconsideration, as there had been no intervening change in controlling law, or clear error, or manifest injustice in its decision. It further denied Yocha Dehe's motion to stay the proceedings pending appeal.

Yocha Dehe filed a notice of appeal and an emergency motion for a stay pending appeal. This court ordered the federal appellees to file a response and a merits brief. On March 4, 2021, this court granted a stay pending appeal.

## II.

On appeal, Yocha Dehe contends that the district court erred in ruling that it was not entitled to intervene as of right and in denying permissive intervention in the alternative. As a threshold matter, Yocha Dehe maintains that the district court reached the wrong conclusion on standing. Our review of the denial of a motion to intervene as of right is *de novo* for issues of law, clear error as to findings of fact, and abuse of discretion as to issues that "involve a measure of judicial discretion." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003). Our review on questions of standing is *de novo*. *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013).

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as of right. It provides, as relevant:

> On timely motion, the [district] court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the

subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Additionally, to intervene under Rule 24(a), the movant must demonstrate that it has standing under Article III of the U.S. Constitution. *Fund For Animals*, 322 F.3d at 731–32.

In seeking reversal, Yocha Dehe relies principally on *Crossroads Grassroots Policy Strategies v. Federal Election Commission*, 788 F.3d 312 (D.C. Cir. 2015). There, this court explained that "[o]ur cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Id.* at 317. Applying that rationale, the court held that Crossroads, as "the beneficiary of a favorable decision by the Federal Election Commission [(FEC)]," had standing to intervene in a lawsuit challenging the Commission's denial of an administrative complaint against Crossroads for alleged violations of the Federal Election Campaign Act. *Id.* at 314–19. The court reasoned:

> Crossroads currently claims a significant benefit from the FEC's dismissal order. As long as it is in place, Crossroads faces no further exposure to enforcement proceedings before the FEC related to the complaint, nor is it exposed to civil liability via private lawsuit. Losing the favorable order would be a significant injury in fact.

*Id.* at 318 (internal citation omitted). In view of the nature of Crossroads' injury, the court explained that causation and redressability "rationally follow[]." *Id.* at 316.

Yocha Dehe maintains that it has standing to intervene because it is injured in the same way as Crossroads inasmuch as it benefits from the Department's Indian Lands Opinion, which has been judicially challenged, and an unfavorable decision would eliminate that benefit. Yocha Dehe describes the benefit it derives from the Indian Lands Opinion as a shield against harm to its "governmental, cultural, and economic interests." Appellant's Br. 15. But the circumstances of *Crossroads* are not present, and neither *Crossroads* nor the opinions on which this court relied there and Yocha Dehe relies here offers sufficient support for an extension of *Crossroads* to these circumstances.

In *Crossroads*, the FEC's action shielded Crossroads from "potential direct regulation" through FEC enforcement proceedings and "further litigation and liability." 788 F.3d at 318. With the FEC order in place, the court observed, "Crossroads faces no further exposure to enforcement proceedings before the FEC related to the complaint, nor is it exposed to civil liability via private lawsuit." *Id.* And "the 'threatened loss' of that favorable action constitute[d] a 'concrete and imminent injury.'" *Id.* (quoting *Fund For Animals*, 322 F.3d at 733).

Admittedly, that Crossroads was a directly regulated party — and therefore benefitted directly from the FEC's action — was not necessary to the court's conclusion on standing. In *Fund For Animals v. Norton*, on which the court in *Crossroads* and Yocha Dehe rely, the agency action involved listing the argali sheep as "threatened" rather than "endangered" in Mongolia among other countries and issuing "permits for sport hunters to import killed argali . . . into the United States as 'trophies.'" *Fund For Animals*, 322 F.3d at 730. The agency action thereby *indirectly* benefitted the potential intervenor, the Natural Resources Department of the Ministry of Nature and

8

Environment of Mongolia. *See id.* at 733; *Crossroads*, 788 F.3d at 318. But the court explained that "while the [Natural Resources Department] is not itself the object of the challenged agency action, sheep that Mongolia regards as its national property and natural resource plainly are its subject." *Fund For Animals*, 322 F.3d at 734. The court then held that the threatened harm — loss of "tourist dollars associated with sheep hunting and a consequent reduction in funding for [Mongolia's] conservation program," *Crossroads*, 788 F.3d at 317 — constituted an *imminent* injury. *Fund For Animals*, 322 F.3d at 733. Further, in *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998), on which the court in *Crossroads* and Yocha Dehe also rely, "all parties agree[d]" that the potential intervenor association had standing because some of its members were directly subject to the challenged rule. *Id.* at 954. Imminence was therefore a non-issue.

Here, by contrast, neither Yocha Dehe nor its property is the direct subject of the Indian Lands Opinion. Additionally, that opinion is too many steps removed from Yocha Dehe's claimed threat of future harm from Scotts Valley's casino project for that harm to be imminent. On the latter point, if a restored tribe succeeds in securing a favorable Indian Lands Opinion, there are several requirements that must be met before that tribe may lawfully operate a gaming facility on the approved parcel of land. First, the tribe must successfully apply to the Department for the parcel to be taken into trust. *See generally* 25 C.F.R. pt. 151. That, the Department explains, requires "additional procedures and distinct determinations, including an environmental review" to comply with the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* Department Br. 12 n.2; *see* 42 U.S.C. § 4332(C). Another step requires the tribe to secure federal approval of a gaming compact with the State (here, California), which must be negotiated. *See* 25 U.S.C. § 2710(d)(1)(C), (d)(3)(A)–(B),

(d)(8).  Additionally, the tribe must obtain federal approval of a tribal gaming ordinance, and, if the tribe decides to outsource management of the facility, federal approval of a management contract.  *See id.* § 2710(d)(1)(A), (d)(9).  Scotts Valley represents that it has yet to complete all these steps.

Together, the indirect relationship between Yocha Dehe and the Indian Lands Opinion and the as-yet remote nature of any harm to Yocha Dehe from a Scotts Valley casino, take Yocha Dehe's asserted injury outside the scope of *Crossroads* and the opinions upon which it relied.  As the court recognized in *Crossroads*, and contrary to Yocha Dehe's characterization of *Crossroads*'s holding, not every "party seeking to uphold a favorable ruling . . . suffer[s] a concrete injury in fact."  788 F.3d at 318.  Yocha Dehe does not.  Because Yocha Dehe does not currently satisfy the injury requirement of Article III standing, it lacks standing to intervene.

Accordingly, we affirm the judgment of the district court and do not reach Rule 24(a)(2)'s requirements or permissive intervention.  *See Defs. of Wildlife*, 714 F.3d at 1323, 1327.